IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:25-cv-01635-ELR |
| TRAVEL LODGE OLD NATIONAL, | ) | |
| LLC, HIMA ENTERPRISES, | ) | |
| INC., and SAS HOTELS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT TRAVEL LODGE OLD NATIONAL, LLC'S MOTION TO DISMISS

Travel Lodge Old National, LLC's ("TLON") Motion is a copy-and-paste duplicate of the motions to dismiss filed by its counsel in all TVPRA cases that they are defending.[1] The playbook is straightforward: ignore all well-pled allegations in Plaintiff's complaint, make wildly inaccurate assertions about the contents of Plaintiff's complaint, and hope the Court believes their fictional recitation is true, while citing to out of date case law that has been rejected and abandoned as incorrect. Such automatic filings that disregard the allegations in each complaint are a waste of the Court's and Plaintiff's time.

---

[1] *See*, Ex. 1

TLON's Motion is replete with false facts indicating its form nature, including that "Plaintiff's Complaint relies solely on conjecture and assumption, alleging only that TLON may have been exposed to 'signs of sex trafficking.'" Dkt. No. [17] at 3. This is false. While TLON was certainly exposed to and saw signed of child sex trafficking at its hotel, in her Complaint, Plaintiff properly alleged, among other well-pled and detailed facts, that TLON *actually knew* that Plaintiff was being sold for sex at its hotel, its front desk employee admitted to Plaintiff's grandmother that she rented rooms to Plaintiff's pimp, and that she knew J.S., a child, was being forced to sell sex for money. Dkt. No. [1] ¶ 19. Further, because she knew that J.S. and other children were being sold for sex at the Travelodge, the employee bought the children food from McDonalds. *Id.*, ¶ 20. J.S.'s trafficker was arrested in room 116 of TLON's hotel and charged with human trafficking, pandering, and aggravated child molestation. *Id.*, ¶ 21.

In addition to misrepresenting Plaintiff's Complaint, TLON argues that Plaintiff cannot plausibly state a claim under 18 U.S.C. § 1595 unless TLON knowingly participated in her sex trafficking. This argument has been repeatedly rejected by courts, and Eleventh Circuit has held it "make[s] no sense." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). TLON's Motion should be promptly denied.

2

## STATEMENT OF FACTS

Plaintiff was a child when, for approximately two years, she was repeatedly sold for sex at TLON's Travelodge by Wyndham located at 2471 Old National Highway, College Park, Fulton County, Georgia 30349 ("Travelodge"). Dkt. No. [1] ¶¶ 3, 18. Plaintiff's trafficker routinely took her between the Travelodge and a nearby Econo Lodge for the purposes of selling her for sex, with each hotel stay lasting anywhere from 2–3 days to a month. *Id*., ¶ 18. Plaintiff stayed at each hotel on approximately 20 separate occasions. *Id*.

As noted above, and as alleged in her Complaint, Plaintiff's grandmother, who lived nearby, went to the Travelodge multiple times during Plaintiff's trafficking with flyers and asked employees if they had seen J.S. *Id*., ¶ 19. A hotel employee confirmed to J.S.'s grandmother that she rented rooms to J.S.'s pimp and that J.S. was being forced to sell sex for money. *Id*. The Travelodge employee told J.S.'s grandmother that she bought food from McDonalds for J.S. and the other children being sold for sex at the Travelodge. *Id*., ¶ 20.

While Plaintiff was trafficked there, the Travelodge was described as "an open market for sex" because so many children, including J.S., were being sold for sex there. *Id*., ¶ 25. Plaintiff and other child trafficking victims, some even younger than J.S., frequently appeared throughout the Travelodge and on its premises and

3

approaches wearing very little clothing and solicited dates for sex in its parking lot. *Id.*, ¶ 26. As a result, Plaintiff properly alleged in her Complaint that a large number of buyers frequented the Travelodge each day, and that TLON knew or should have known of the frequent presence of men who loitered in its parking lot to meet and have sex with children being sold for sex, who were forced to openly solicit men in TLON's parking lot, including Plaintiff. *Id.*, ¶¶ 25, 27.

Plaintiff also appropriately alleged that while she was being sold for sex at the Travelodge, she interacted with TLON's staff, managers, and the owner of the Travelodge, who knew or should have known that she was a child victim of sex trafficking occurring at their hotel. *Id.*, ¶ 28. Plaintiff's trafficker frequently visited the front desk of the Travelodge and interacted with hotel employees while buyers were in the room having sex with J.S. *Id.*, ¶ 29. Plaintiff further alleged that TLON's employees accommodated and were familiar with her trafficker, due to him having stayed at the Travelodge while trafficking other children there in the months preceding J.S.'s child sex trafficking. *Id.*, ¶ 30. TLON's employees also visited the rooms used to sell Plaintiff for sex at the Travelodge. *Id.*, ¶ 31.

Plaintiff also appropriately alleged in her Complaint that while she was a child sex trafficking victim at the Travelodge, she exhibited numerous well-known and visible signs of a child sex trafficking victim in the common areas, of which

4

TLON knew or should have known, including her age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, soliciting male patrons, and monitoring and control by her trafficker, an older man. *Id*., ¶ 22. While she was trafficked at the Travelodge, Plaintiff's rooms evidenced numerous well-known and visible signs of child sex trafficking of which TLON knew or should have known. *Id*. ¶ 23. Many older men visited her sex trafficker's room each day at the Travelodge, each for short periods of time. *Id*., ¶ 24. TLON knew or should have known that the number of daily, older male visitors to the room was obviously indicative of child sex trafficking, but it negligently failed to control or monitor the frequent male visitors. *Id*.

Further, Plaintiff alleged that at all relevant times, the Travelodge and its approaches were well known for crime, prostitution, and child sex trafficking. *Id*., ¶ 32. TLON knew or should have known of other child sex trafficking, sex crimes, and other crimes at the Travelodge and in its immediate vicinity before Plaintiff was trafficked for sex at the Travelodge and at the nearby Econo Lodge. *Id*., ¶ 33. TLON knew or should have known of violent crimes occurring on its premises and approaches, yet negligently did nothing. *Id*.

TLON had actual or constructive knowledge of publicly available online reviews of the Travelodge reporting widespread prostitution and crime occurring at its Travelodge, yet negligently did nothing. *Id*., ¶ 34. Plaintiff's Complaint then cites to very specific online reviews of the Travelodge that TLON has actual or constructive knowledge of, including:

a)      A June 1010 review stating: "prostitute and drug-dealer looking types seem to have a stake at this location."

b)      A May 2011 review stating: "The area was pretty shady and we didn't feel safe in the room unless we had a chair and our suitcases up against the door. Would not recommend or stay at again."

c)      A October 2011 review stating: "we had 'Ladies of the night' Prostitues working the room next door it was a little unsavory.."

d)      A September 2012 review stating: "Believe the stories above about having to leave your ID for an iron and the board. Believe about the hookers. We didn't see roaches but we did see general spiders and black bugs in the room. The room knobs and locks are cheap and they broke off during our stay so be careful about that. We will not be back to this hotel. Stay somewhere else."

e)      A September 2012 review stating: "I booked it because it was cheap, and after reading the reviews I thought people were just being picky. Boy was I wrong!!! Dirty hotel falling apart, dirty people, drug deals going on all night!"

f)      An October 2012 review stating: "we werent in the room 30 minutes before there was about 10 people in front of our door because they were staying on each side of us, smoking WEED on the balcony, it came in our room from the air conditioner. I called the front desk and said there was people smoking weed and if he didnt call the cops I was, well he called them and they came and busted them with more than just WEED!...It was not a good experience and kinda scarey if u ask me."  A response to this review was posted by "Joy G, Manager at Travelodge by Wyndham College Park."

g)      An April 2013 review stating: "The outside was busy with ladies selling there body,and a guy told me that two guys were out robbing people so I tried to stay in my room."  A response to this review was posted by "Joy H, Manager at Travelodge by Wyndham College Park."

h)      A June 2013 review stating: "They have prostitution around the hotel and drugs no one wants there kids around those kind of things just a horrible experience".  A response to this review was posted by "Joy H, Manager at Travelodge by Wyndham College Park."

i)      A July 2013 review stating: "when entering the room we turned back the cover and there was a used condom at the head of the bed. then my mate dropped his phone and we pulled the mattress up to reach the phone and there was drug paraphernalia under the mattress with other condoms. there was a lot of traffic around the property. females standing outside the rooms with skimpy clothes on. it seems as if this location is for locals to live in weekly. very uncomfortable..beware..."

j)      A September 2013 review stating: "I couldn't even stay one night. When I arrived their was hookers, pimps and crack heads all around the room , the front office and looking around d peoples vehicles."

k)      A September 2013 review stating: "Everything was terrible. This place was in terrible condition, stinky, cable TV offered less than 15 channels, and there was constant traffic in a nearby room, noticeable by a coded knock ta-tata-ta-ta...ta-ta, for several hours into the night. I'll let your imagination decided what was going on. Stay away at all costs."

l)      An April 2014 review stating: "my little sister steps outside to smoke a cigarette and a stranger walks up to her out of no were asking if she wants to buy 'DOPE' how safe is this for anyone I was embarrassed and scared at the same damn time. . . . PLEASE DO NOT STAY HERE!! 'NOT SAFE AT ALL'".

m)     A May 2014 review stating: "Do not consider staying t this location. Drugs, Prostitutes, and extremely poor service."

n)     A May 2014 review stating: "Do not be fooled by the photos. The overall apperance is fine but you will not get a very safe feeling from this property. It appears to be the place for the local working girls to make a living."

o)     A May 2014 review stating: "This hotel obviously caters to drug dealers and prostitutes. All night people were hanging outside.A man asked me if I had weed for him to buy, Another man was selling stuff he stole from a store." *Id.*, ¶ 35.

After approximately two years, J.S. was finally able to escape from her trafficker. *Id.*, ¶ 21. After her escape, and while she was still a child, Plaintiff encountered her trafficker at a restaurant. *Id.* Plaintiff appropriately alleged that her trafficker told J.S. that he was staying in room 116 at the Travelodge, and J.S.'s grandmother immediately called the police. *Id.* The G.B.I. set up a sting and arrested J.S.'s trafficker in room 116 at the Travelodge the next morning. *Id.* As alleged in her Complaint, Plaintiff's trafficker was charged with human trafficking, pandering, and aggravated child molestation. *Id.*

Finally, Plaintiff's Complaint alleges TLON owned, operated, maintained, controlled, and managed the Travelodge. *Id.*, ¶ 38. TLON knowingly benefitted

from Plaintiff's minor sex trafficking by receiving revenue generated by the operation of the Travelodge, including the revenue generated for the rooms in which J.S., a child, was sold for sex. *Id.*, ¶ 47. Next, Defendant TLON participated in a hotel venture and, based on the well-pled allegations stated above and more thoroughly in Plaintiff's Complaint, it knew or should have known that the hotel venture violated the TVPRA. *Id.*, ¶ 48. TLON also engaged in a sex trafficking venture by and through the acts and omissions of its employees and managers, and in providing to Plaintiff's trafficker the necessary venue for selling Plaintiff, a child, for sex. *Id.* The venture in which Defendant TLON participated was in or affecting interstate commerce. *Id.*, ¶ 49.

Defendant TLON knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant TLON, its agents, employees, and representatives, actually knew that Plaintiff, a child, was being sold for sex at the Travelodge, and knew it was renting rooms her to trafficker for the purposes of trafficking her but did nothing. *Id.*, ¶ 50. Defendant TLON also knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant TLON, its agents, employees, and representatives knew or should have known of other sex trafficking and sex crimes at the hotel before and while Plaintiff was trafficked for sex at the Travelodge. *Id.*, ¶ 51.

10

Because Plaintiff has alleged specific, clear, and well supported facts stating a cause of action against TLON, and for the reasons stated below, Plaintiff respectfully asks that TLON's Motion be promptly denied.

## ARGUMENT AND CITATION TO AUTHORITY

### I.    PLAINTIFF IS ENTITLED TO THE BENEFIT OF EVERY REASONABLE DOUBT AND INFERENCE.

"[W]hen considering a motion to dismiss, the court must accept all allegations of fact as true and should only dismiss when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proven in support of his claim." *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1429 (11th Cir. 1985). In deciding a motion to dismiss, all pleadings are to be construed most favorably to the Plaintiff and all doubts should be resolved in the Plaintiff's favor. *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118 (11th Cir. 2006). Because the allegations in Plaintiff's Complaint, taken as true, plainly state a cause of action against TLON, its Motion must be denied, and the parties should be permitted to proceed with discovery.

### II.    PLAINTIFF STATES A TVPRA CLAIM AGAINST TLON.

Section 1595(a) states:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or

11

by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Thus, "to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

In this case, a hotel employee has admitted that she rented rooms to J.S.'s pimp ***knowing*** that the rental was so that J.S. could be sold for sex in TLON's hotel. No case in the country has ever held that a Plaintiff fails to state a claim under the TVPRA when an employee who, while in the course and scope of their employment, knowingly rents a room to a trafficker for the purpose of selling a child for sex.[2]

---

[2] Plaintiff's attorneys reviewed 161 civil sex-trafficking opinions under § 1595—believed to encompass *all* relevant opinions nationwide—and found no case holding that this form of actual knowledge and involvement in trafficking did not satisfy the elements of a § 1595(a) claim. *See, e.g.*, *A.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5231-JPB, 2022 WL 1644921 (N.D. Ga. May 24, 2022); *G.W. v.*

Oddly, TLON relies on a number of arguments that were made in the early days of hotel sex trafficking cases that have either been rejected in the Eleventh Circuit entirely, or abandoned as incorrect. These flawed arguments include that to state a claim, Plaintiff must allege that TLON actively participated in her sex trafficking and meet the definition of participation in a venture found in 18 U.S.C. § 1591. *See*, Dkt. No. [17] at 3. However, the language of the statute makes clear, and the Eleventh Circuit confirmed in *Doe* in 2021 that such an argument "make[s] no sense." *Doe #1*, 21 F.4th 714 at 724. Instead, "liability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in the sex trafficking." *A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *6 (S.D. Ohio June 16, 2020). *See also*, *Doe #1*, 21 F.4th 714 at 724.[3]

---

*Northbrook Indus., Inc.*, No. 1:20-cv-5232-JPB, 2024 WL 3166083 (N.D. Ga. June 14, 2024); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021); *I.R. v. I Shri Khodiyar, LLC*, No. 1:22-cv-844-SEG, 2024 WL 1928755 (N.D. Ga. Mar. 18, 2024); *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247 (N.D. Ga. 2023); *Doe (R.A.) v. Best W. Int'l*, No. 2:23-cv-3459, 2024 WL 3850958 (S.D. Ohio Aug. 16, 2024); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-cv-6038, 2024 WL 3276417 (W.D. Wash. July 2, 2024); *A.M. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3797, 2024 WL 1347301 (S.D. Ohio Mar. 29, 2024). Even the unpublished, non-binding opinion in *K.H. v. Riti* held that the motel's actual knowledge of a person's trafficking was sufficient. 2024 WL 505063 at *3 (11th Cir. Feb. 9, 2024). Here, there is such actual knowledge of J.S's trafficking.
[3] As noted, though, Plaintiff satisfies that and any other definition due to TLON's

### A.    TLON knowingly benefited from the hotel.

TLON received money from Plaintiff's traffickers to rent the rooms in which she was trafficked.[4] Every court to analyze this element "ha[s] found that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp 3d 1228, 1234 (N.D. Ga. 2022) (collecting cases).

TLON's citations to *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) and *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) are woefully out of date and hearken back to arguments made by litigants in the first filed cases in the Northern District of Georgia in 2019 and 2020, when there was no body of law on which to rely. Those two cases have never been followed in the Eleventh Circuit and don't involve hotels that rent rooms to sex traffickers. Since the Eleventh Circuit's *Doe #1 v. Red Roof Inns, Inc.* opinion, no court in this circuit has had to address the fringe argument advanced by TLON, likely because of the uniform agreement since that time in hundreds of hotel sex trafficking cases that "the rental of a room constitutes a financial benefit

_____

employee's admission that she knew she was renting rooms so J.S. could be sold for sex at the hotel.
[4] Dkt. No. [1] ¶¶ 3, 38, 46, 47.

14

from a relationship with the trafficker sufficient to meet this element of the §

1595(a) standard." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp 3d 1228, 1234

(N.D. Ga. 2022) (collecting cases). No court in this circuit has agreed with TLON

that the benefit prong requires "some benefit with knowledge of, and on account

of, the trafficker's alleged exploitation of Plaintiff," Dkt. No. [17] at 6.[5] Plaintiff

has sufficiently alleged that TLON knowingly benefitted under the TVPRA.

### B.    Plaintiff's Complaint alleges that TLON "participated in a venture".

Again, in its Motion, TLON argues that Plaintiff must allege that it actively

and knowingly participated in her sex trafficking to state a claim. Dkt. No. [17] at

7-9. This argument was rejected by the Eleventh Circuit in *Doe #1*.  In *Doe #1*, the

hotel franchisors argued, just as TLON does here, that Section 1591's definition of

---

[5] *Doe v. LQ Mgmt. LLC*, 0:20-62541-CIV, 2021 WL 8775730, at *5 (S.D. Fla. Feb. 1, 2021) ("As this Court reasoned in *Doe v. Rickey Patel, LLC,* however, stating a civil claim under the TVPRA, does not require pleading facts that demonstrate actual knowledge of the sex trafficking venture."); *Doe v. Rickey Patel, LLC*, 0:20-60683-WPD-CIV, 2020 WL 6121939, at *6 (S.D. Fla. Sept. 30, 2020); ("Alleging that Defendants knowingly received rent for hotel room Defendants knew or should have known was being used in a sex-trafficking venture is sufficient to meet the "knowingly benefit" standard for a claim under § 1595 of the TVPRA."); *Bridges v. Poe*, 487 F. Supp. 3d 1250, 1262 (N.D. Ala. 2020) (not deciding issue because allegations meet a knowing standard regardless). *Geiss* was also discussed in *Doe #1 v. Crowley Mar. Corp.*, 3:23-CV-383-MMH-JBT, 2024 WL 1346947, at *14 (M.D. Fla. Mar. 29, 2024), which was a perpetrator case that did not address the beneficiary standard at all.

"participation in a venture" should be read into Section 1595. The Eleventh Circuit rejected this argument and found that this interpretation of the statute resulted in "a nonsensical sentence" that made the "should have known" language found in Section 1595 superfluous. *Doe #1*, 21 F.4th 714 at 724.

Rather, binding precedent holds that "participation in a venture" means "taking part in a common undertaking or enterprise involving risk and potential profit." *Id*. at 719. *Doe #1*'s definition of "participation in a venture" is broad and encompasses more than just knowing or intentional criminal conduct, such as acting as a lookout for traffickers. Yet even if "participation in a venture" meant something other than what *Doe #1* held it meant, as some cases have erroneously said (*e.g.*, *K.H. v. Riti, Inc.,* No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024)), the evidence here of knowing employee involvement, while in the course and scope of their employment, meets that higher standard as well. No opinion in the country has ever held otherwise, and Plaintiff has exceeded the requirement of participation in a venture.

Plaintiff appropriately alleged that the operation of the Travelodge is a venture. As Plaintiff alleged, multiple people, including TLON and its employees, agents, managers, and owner, worked together, facing risk, to operate the Travelodge for profit, knowing that it was renting rooms her to trafficker for the

purposes of trafficking her. Dkt. No. [1] ¶ 16-35, 38, 45-50. As Plaintiff properly alleged, TLON owned, operated, owned, managed, supervised, operated, oversaw, controlled the operation of, and was inextricably connected to the renting of rooms at the Travelodge, from which it benefited financially. Dkt. No. [1] ¶ 3. Unlike other businesses, hotel ventures play a critical role in sex trafficking. They are the venue of the crime, where the commercial sex happens, including the sale of children for sex.  Providing the venue—for money, facing risk—is participation in a venture that violates the TVPRA. "[L]iability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in the sex trafficking". *A.C.*, 2020 WL 3256261, at *6 (S.D. Ohio June 16, 2020).

But Plaintiff also alleged that TLON "engaged in a sex trafficking venture by and through the acts and omissions of its employees and managers, *and* in providing to Plaintiff's trafficker the necessary venue for Plaintiff's minor sex trafficking." Dkt. No. [1] ¶ 48 (emphasis added). Specifically, TLON's employees knew that Plaintiff, a child, was being sold for sex at the Travelodge, knew that it was renting rooms to her trafficker for that purpose, actively bought food for Plaintiff because they knew that she was being sold for sex at the Travelodge, visited the rooms that Plaintiff was sold for sex in, allowed Plaintiff and other

children to openly solicit sex in the parking lot, which was "an open market for sex", and knew, were familiar with, and accommodated her trafficker because he had trafficked other children there prior to Plaintiff's trafficking. *Id.*, ¶¶ 19-21, 25-27, 30-31. Any one of these appropriately pled factual allegations, standing alone, would be sufficient to show that TLON participated in a venture.  And, just as in *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1338 (N.D. Ga. 2024), a case decided at summary judgment, these allegations support that Plaintiff's trafficker "profited from operating in an environment that was hospitable to trafficking – one in which hotel employees would, among other things, not call the police, permit trafficking victims to solicit men in hotel common areas, visit traffickers' rooms to inquire if trafficking victims needed anything" and more specifically, as alleged here, buy food for children who they knew were being sold for sex at the hotel.

Plaintiff alleged that the hotel venture of operating the Travelodge became a sex trafficking venture that TLON participated in through its intentional acts, negligence, and willful blindness. This allegation is plausible based on the well-pled allegations in Plaintiff's Complaint, and Plaintiff's case should proceed promptly without additional delay.

**C.    Plaintiff's Complaint alleges that the venture violated the TVRPA as to her.**

As to the third element, there is evidence from which a jury could conclude "that the venture in which Defendant participated committed a crime against her." *D.H. v. Tucker Inn Inc.*, 2023 WL 6538391, at *4. To prove this element, J.S. must adduce evidence "she was a minor when she was forced to engage in commercial sex acts and that the Defendant had a reasonable opportunity to observe her on the premises." *Id.* (citing *United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019)). It is also criminal sex trafficking if a hotel knowingly harbors a sex trafficking victim, or benefits financially from knowingly facilitating sex trafficking. *See* 18 U.S.C. § 1591(a)(1) (harboring) and (a)(2) (financially benefitting).

As alleged in her Complaint, Plaintiff was a child at the time of her trafficking, and accordingly, "no force, fraud, threats, or coercion are necessary to establish a TVPRA violation when a person knowingly transports a person, while knowing or in reckless disregard of the fact that the person is a minor and will be caused to engage in commercial sex. 18 U.S.C. § 1591(a)(1)." *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d at 1339. Because Plaintiff was a child when she was trafficked for sex at the Travelodge, and she has appropriately alleged that the venture was in or affecting interstate commerce, she has alleged that the venture

violated the TVPRA as to her. In addition, although not required, Plaintiff has appropriately and properly alleged that she was forced to sell sex for money at the Travelodge, and that TLON knew it was renting rooms to Plaintiff's trafficker for the purpose of selling the child for sex. Dkt. No. [1] ¶ 19. This knowing facilitation of J.S.'s child sex trafficking also independently violated the TVPRA (§ 1591(a)(1) and (2)) because the hotel knowingly harbored Plaintiff under (a)(1) and knowingly benefitted under (a)(2).

**D.    Plaintiff properly alleged that TLON knew or should have known the Travelodge engaged in her sex trafficking.**

Though TLON repeatedly conceals this fact from the Court—a consequence of the copy-paste approach to litigating old arguments in factually different cases—Plaintiff's Complaint alleges that TLON had *actual* knowledge of the venture violating the TVPRA as to the J.S. Dkt. No. [1] ¶ 19. That alone is enough to deny TLON's motion to dismiss. But Plaintiff's Complaint is also replete with evidence that satisfies the "knew or should have known" standard of the TVPRA.

Read in the light most favorable to Plaintiff, the Complaint plausibly alleges TLON knew or should have known that its hotel engaged in her child sex trafficking. "[K]new or should have known in the exercise of ordinary care" is the well-established knowledge standard of negligence, also referred to as

20

"constructive knowledge." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1497 (11th Cir. 1985). Constructive knowledge is that knowledge which 'one using reasonable care or diligence should have.'" *Doe #1*, 21 F.4th at 725 (quoting Black's Law Dictionary). Thus, TLON "may be liable under the TVPRA if they have either actual or constructive knowledge that the venture in which they participated and from which they benefited violated the TVPRA as to" J.S. *Id.*

As alleged, the knowledge of TLON's employees and managers was the knowledge of TLON, including knowledge of those who took Plaintiff food because they knew that she was a child sex trafficking victim, visited the rooms used for Plaintiff's sex trafficking, and allowed children, including Plaintiff, to openly solicit sex in the parking lot. Dkt. No. [1] ¶¶ 19-21, 25-28 30-31. Further, TLON's employees observed the sheer volume of child sex buyers coming and going from Plaintiff's rooms, as well as the condition of her rooms and her physical appearance, all indicative of minor sex trafficking. *Id*. ¶¶ 22-24.

In its brief, TLON points out that general awareness that sex trafficking sometimes occurs at hotels may be insufficient to state a TVPRA claim. Dkt. No. [17] at 12. However, general awareness is not what Plaintiff alleged. Plaintiff's Complaint alleges that TLON knew or should have known of minor sex trafficking and other sex crimes at this specific hotel prior to Plaintiff's minor sex trafficking,

21

and ***actually knew*** that Plaintiff, a child, was being trafficked for sex there. Dkt.
No. [1] ¶ 19.

Plaintiff also alleges that TLON knew or should have known of online
reviews which provided notice of sex trafficking, prostitution, and other crimes at
its hotel. *Id.* ¶¶ 35. Plaintiff has alleged each element of a TVPRA claim, and
TLON's Motion should be denied.

> **E.    Any *Riti* arguments that TLON may make are wrong, but even if
> they weren't, that standard is met by the egregious facts of this
> case.**

*Doe #1* is the only binding authority for this Court. 21 F.4th 714 (11th Cir.
2021). The unpublished, non-binding *Riti* opinion violates and misapplies *Doe #1*,
committing significant and consequential errors. Because this motion has been
copy–pasted so frequently, Plaintiff suspects that TLON plans to discuss the non-
binding, unpublished *Riti* in its reply brief so that Plaintiff has no opportunity to
respond. While predictable, *Riti* also has no effect on whether Plaintiff has stated a
claim under the TVPRA because the allegations in the complaint satisfy even that
erroneous standard.

*First*, the Eleventh Circuit made it clear that "participation in a venture" for
TVPRA civil-liability purposes requires only that the defendant "take part in a
common undertaking involving risk or profit." *Id.* at 727. Importantly, that

common undertaking does not need to be a sex trafficking venture. *Id.* at 730 (Jordan, J., concurring). *Second*, *Riti* incorrectly dismissed the distinction between franchisors and companies that own and operate hotels (like TLON), finding it immaterial. 2024 WL 505063, at *3. This is a fundamental misreading of *Doe #1*, which concerned "claims against *franchisors that do not operate or manage the hotels* where sex trafficking allegedly occurred." 21 F.4th at 727 (Jordan, J., concurring) (emphasis added).

*Third,* the *Riti* opinion misses entirely the distinction that in *Doe #1*, the plaintiffs were held to proving a "sex trafficking venture" only because they pled a "sex trafficking venture," against hotel franchisors. *Doe #1*, 21 F.4th at 726 ("Over and over, they repeated this phrase: sex trafficking venture. In fact, every single reference to a "venture" in the complaints refers to a 'sex trafficking venture.'"). The unpublished *Riti* opinion makes the classic mistake of taking an application of the law to a specific factual situation, and making a blanket rule out of it, changing the legal standard from a constructive knowledge one to an actual knowledge standard. *K. H. v. Riti, Inc.*, 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (applying "sex trafficking venture" requirement despite the complaint not alleging it). And as held in *Doe #1*, that type of "knowing" standard "make[s] no sense" with the "should have known" beneficiary claim. *Doe #1*, 21 F.4th at 724.

23

Courts in this district have articulated that distinction before, and the Court should do so again in this case:

> The [*Doe #1*] court found that none of the allegations suggested that the franchisors *participated* in a sex-trafficking venture with the plaintiffs' traffickers, concluding that "observing something is not the same as participating in it." The court further noted that the plaintiffs had alleged that the ventures at issue were *sex-trafficking* ventures and thus that its opinion did not address whether the plaintiffs would have stated plausible claims had they alleged simply that the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the TVPRA.

*A. J. v. Pac. Capital Funding, LLC*, 1:22-CV-02752-LMM, 2023 WL 6193013, at *2 (N.D. Ga. Apr. 14, 2023) (citations omitted).

Still, here, the Court need not decide whether *Riti* is right or wrong because, as explained above, Plaintiff's allegations meet the higher standard articulated in *Riti* anyway.[6] Plaintiff's Complaint alleged that TLON's employees knew J.S. was

---

[6] If the Court does decide to follow *Riti*, the Court must separately determine whether that opinion is correct and persuasive to the point that it should be followed. "As a preliminary matter, we pause to reiterate an elemental point: While our unpublished opinions 'may be cited as persuasive authority,' they 'are not considered binding precedent.' 11th Cir. R. 36-2. We have said so again and again, but it bears repeating. Accordingly, a district court shouldn't simply cite to one of our unpublished opinions as the basis for its decision without separately determining that it is persuasive. Here, the district court did just that—it treated *Cawthorn [v. Auto-Owners Ins. Co.*, 791 F. App'x 60 (11th Cir. 2019),] as binding authority and failed to determine whether that decision correctly analyzed Florida law. For reasons we'll explain, *Cawthorn* didn't properly analyze Florida law, and the district court shouldn't have followed it." (cleaned up)). *McNamara v. Gov't*

24

being trafficked and rented rooms to her trafficker for that purpose. Dkt. No. [1] ¶ 19. No court in this country, including *Riti*, has ever held that such direct involvement failed to state a claim under the TVPRA. For that additional reason, TLON's motion should be denied.

### III.    PLAINTIFF STATES A CLAIM FOR PUNITIVE DAMAGES.

Just as Plaintiff has stated a TVPRA beneficiary claim against TLON, she also states a punitive damages' claim against it. Dkt. No. [1] ¶ 70. TLON argues only that if this Court dismisses her TVRPA beneficiary claim, it must also dismiss her punitive damages claim. Plaintiff agrees with TLON that a punitive damages' claim cannot stand alone, but because Plaintiff's TVPRA beneficiary claim against TLON survives, so does her punitive damages claim.

### <u>CONCLUSION</u>

The allegations in Plaintiff's Complaint, taken as true, plainly state claims against TLON.  Based on the above and foregoing, Plaintiff respectfully asks that the Court deny TLON's Motion.

This 4th day of June, 2025.

*[signatures on following page].*

---

*Emps. Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
*Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
Jonathan S. Tonge
Georgia Bar No. 303999
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***Plaintiff's Brief in Opposition to Defendant TLON's Motion to Dismiss*** has been prepared with one of the following font and point selections approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

/s/ Denise D. Hoying
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:25-cv-01635-ELR |
| TRAVEL LODGE OLD NATIONAL, | ) | |
| LLC, HIMA ENTERPRISES, | ) | |
| INC., and SAS HOTELS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has

been served upon counsel for Defendants via the Court's CM/ECF Filing System

and via email on this day as follows:

Daniel C. Headrick                    Kathryn S. Whitlock
Johnson Evans & Headrick, P.C.        Thomas D. Whiddon
2690 Cobb Parkway SE                  McAngus Goudelock & Courie, LLC
Suite A5-342                          270 Peachtree Street, NW, Suite 1800
Smyrna, GA 30080                      Atlanta, GA 30303

Peter F. Schoenthaler
Christopher Rosser
Timothy M. Blenner
Peter F. Schoenthaler, P.C.
6400 Powers Ferry Road NW
Suite 230
Atlanta, GA 30339

28

This 4th day of June, 2025.

Respectfully submitted,

**LAW & MORAN**


/s/ Denise D. Hoying
Denise D. Hoying
Georgia Bar No. 236494
*Attorney for Plaintiff*

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com